**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                    :
JOHN MOORE,                         :   CIVIL ACTION
                                    :
           Petitioner,              :
                                    :
     v.                             :   NO. 05-2796
                                    :
DAVID DIGUGLIELMO,                  :
et al.,                             :
                                    :
           Respondents.             :
_____:

ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

        John Moore has filed a Petition for writ of habeas corpus.
For the following reasons, I recommend that the Petition be
dismissed without an evidentiary hearing and with no certificate
of appealability issued.

## I.    FACTS AND PROCEDURAL HISTORY.[1]

        On July 7, 1996, Moore and his associate James Lamb
conspired to rob drug buyers in an area of Philadelphia noted for
its drug trafficking activity.  They selected three victims, whom
they forced to lie face down in the street and pistol-whipped
them.  One of the victims, Sammy Cedano, resisted the attempt to
take his gold chain.  He was shot in the back and later died of
his wound.  Another victim, William Cintron, received permanent

---

        [1]The facts of Moore's crimes are taken from the Pennsylvania
Superior Court's opinion deciding Moore's direct appeal.
Commonwealth v. Moore, No. 1601 EDA 2000 (Pa. Super. Ct. July 17,
2001) (Attached as Ex. A to Respondents' Response).

injuries from a gunshot wound as he fled from the robbers.

Moore was tried in a bench trial before Judge Steven R. Geroff of the Philadelphia Court of Common Pleas.  The trial evidence included the testimony of James Lamb who, on the advice of counsel, cooperated with police in exchange for a guilty plea to third degree murder.  The defense theory pursued by counsel Nino Tinari, Esquire, was that Lamb shot Cedano, not Moore. (Response at 18 citing N.T. 5/9/00 at 86.)  Moore was found guilty of one count each of second degree murder, criminal conspiracy, and possessing an instrument of crime; two counts of aggravated assault; and three counts of robbery.  Moore received a sentence of life imprisonment on the murder conviction and concurrent terms of imprisonment on the other counts of conviction.

On direct appeal, Moore preserved the following issues for review: 1) the trial judge erred in failing to grant a mistrial predicated on references to prior criminal conduct; 2) the verdicts were contrary to the weight of the evidence; and 3) the trial judge imposed an illegal sentence because the concurrent terms imposed for the robbery conviction involving victim Cedano should have merged with the second degree murder sentence.  The Superior Court affirmed the judgments of conviction, but vacated the portion of sentence for the Cedano robbery, agreeing with

Moore that the sentences should have merged.[2]  The Pennsylvania
Supreme Court denied allowance of appeal on November 21, 2001.
Commonwealth v. Moore, 790 A.2d 1019 (Pa. 2001).

Moore filed his first petition pursuant to the Pennsylvania
Post Conviction Relief Act ("PCRA") on June 10, 2002.  He alleged
that trial counsel Tinari was ineffective for failing to file a
motion in limine to bar Lamb's testimony, by coercing Moore to
waive his right to a jury trial, by advising him not to testify,
and for failing to communicate with him prior to the trial.  He
also alleged that the prosecutor committed misconduct by using
perjured testimony and failing to correct the perjured testimony
of James Lamb.  (Response Ex. B.)

Barbara McDermott, Esquire was appointed to represent Moore
by Judge Geroff, but upon her review of the record, counsel
concluded there were no viable grounds to proceed and filed a
Finley letter with the court.  See Commonwealth v. Finley, 550
A.2d 213 (Pa. Super. Ct. 1988) (en banc) (describing the
requirements of a Finley letter, which must be filed when
appointed counsel seeks to withdraw from a collateral appeal
filed under the PCRA).  Specifically, McDermott informed the

---

[2]The illegality of the sentence was cured by vacating the
sentence for the predicate offense and leaving the sentence for
the second degree murder conviction in place.  In reaching this
conclusion, the Superior Court noted that the trial judge himself
acknowledged the error and requested that the robbery sentence be
vacated.  Id. slip op. at 8.

court that she contacted Lapricia Jessup, the sister of James
Lamb and mother of Moore's child, whom Moore had identified to
trial counsel as a potential exculpatory witness, but who was
never called to testify.  (Response Ex. C at 6-7.)  While Moore
never raised this issue of ineffective assistance in his *pro se*
Petition, he apparently raised the issue with McDermott, who
advised the Court in the <u>Finley</u> letter that she contacted Jessup.
Jessup told McDermott that: 1) she had a conversation with Lamb
after his arrest; 2) Lamb told her that he could not remember who
was involved in the robbery with him; 3) Moore and Lamb spent
time together on a daily basis at the time of the murder; and 4)
Jessup told Lamb to cooperate with the Commonwealth and identify
his co-conspirator.  (Response Ex. C at 6-7.)  McDermott
reported, however, Jessup would not testify or sign an affidavit.
(<u>Id.</u>)  Accordingly, PCRA counsel determined that there was no
evidence that would support Moore's claim that Attorney Tinari
was ineffective for failing to present Jessup as a trial witness.
She added that any attempt by trial counsel to elicit evidence
from Jessup would have been questionable trial strategy, since
Jessup would have testified to her knowledge that Moore and Lamb
spent time together on a daily basis at the time of the incident,
and that she counseled her brother to cooperate with the
Commonwealth and identify his co-conspirator.  (<u>Id.</u> at 7.)
Accordingly, she concluded that Moore could not demonstrate any

-4-

prejudice arising from Tinari's failure to call Jessup as a witness.  (Id.)

Based on McDermott's Finley letter, Judge Geroff issued a Notice of Intent to Dismiss the Petition.  (Response Ex. D.) Moore filed a response to the Notice setting forth the same issues he raised in his *pro se* petition, and adding the additional argument that PCRA counsel McDermott was constitutionally ineffective because she could not predict what favorable evidence Jessup could have provided to trial counsel Tinari.  (Response Ex. E. at 3-5.) Moore also attached to the response an affidavit of Herman Brooks, who asserted that while in the Youth Study Center he asked James Lamb "what he was locked up for and he told me for that body that Newton did on 9th Street."  He also attached what purports to be a letter he wrote to trial counsel dated October 14, 1999, identifying Jessup as a potential witness. (Response Ex. E.)

Thereafter, on December 23, 2002, Judge Geroff dismissed the PCRA petition without a hearing.  (Response Ex. F.)  On May 12, 2003, he issued an opinion explaining his decision for the dismissal.  (Response Ex. G.)  Based on the facts presented by McDermott's Finley letter, he found that Moore could not meet his burden under the Pennsylvania law governing ineffective assistance of counsel claims on the issue of Tinari's failure to investigate Jessup's evidence.

Moore appealed, raising seven issues: 1) trial counsel was ineffective for failing to object to Lamb's false testimony; 2) the trial court erred in crediting portions of Lamb's testimony; 3) trial counsel was ineffective for advising Moore not to testify after Lamb implicated him in the robbery; 4) PCRA counsel was ineffective for failing to obtain an affidavit from Jessup; 5) PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness for stipulating to the Coroner's report concerning the cause of death; 6) PCRA counsel was ineffective for failing to file an amended PCRA petition; and 7) the PCRA Court erred in concluding that none of the issues raised in Moore's *pro se* petition had arguable merit. (Response Ex. I at 3-4.) On August 27, 2004, the Pennsylvania Superior Court, with one judge dissenting, dismissed the appeal of the PCRA decision. (Id.)

On May 17, 2005, Moore filed a third PCRA petition.[3] He alleged he was entitled to a new trial based upon James Lamb recanting his testimony. (Response Ex. J.) Moore attached to the petition an affidavit by Lamb averring that he swore falsely when he testified at trial that Moore was with him during the robbery; that he had told the police that a neighborhood friend

---

[3]Moore filed a second PCRA petition on May 3, 2004, while the appeal of his first petition was still pending. The PCRA Court noted that this petition was summarily dismissed because the first petition was still pending. (Response Ex. K at 2.) It has not been included in either parties' habeas submissions.

-6-

named Newton was with him, but that police threatened him with
the death penalty if he didn't implicate Moore; and that while
Lamb saw Moore on the night of the murder, it was before Newton
robbed the victims with Lamb's help.

Judge Geroff dismissed the third petition, finding that
although it was timely, Lamb's recantation was "absurd and
totally incredible.  If another man from the neighborhood had
been involved instead of the petitioner, Mr. Lamb could have
received the same deal for his testimony against that man."
(Response Ex. K at 4-5.)  The dismissal was affirmed by the
Superior Court on June 28, 2007.  (Response Ex. M.)

Moore filed the current federal habeas petition on June 10,
2005, while his third PCRA petition was still pending, raising as
issues: 1)ineffective assistance of trial counsel for failing to
investigate, interview and call witness Lapricia Jessup; 2)
ineffective assistance of trial and appellate counsel for
stipulating to Coroner's report; 3) ineffective assistance of
trial counsel for failing to object to Lamb's false testimony; 4)
trial counsel ineffectiveness in advising Moore not to testify on
his own behalf; and 5) a due process claim arising from the trial
court's failure to properly weigh the probity of Lamb's
testimony.  In a prior Report and Recommendation dated September
15, 2005, I recommended that the petition be stayed pending
resolution of Moore's third PCRA petition.  On June 5, 2007,

-7-

following the denial of his appeal in state court, Moore moved to lift the stay and file a counseled amended habeas petition.  In the counseled amended habeas petition, Moore raises as issues: 1) ineffective assistance of trial counsel for failing to investigate Moore's claims of innocence and advising Moore to plead guilty and derivative ineffective assistance of PCRA counsel for failing to raise the issue; 2) a due process violation arising from the PCRA court's failure to conduct an evidentiary hearing into the facts raised by the Lamb affidavit; and 3) a due process violation arising from the PCRA Court's dismissal of Moore's claim of actual innocence based on Lamb's recantation.  Thereafter, the Commonwealth filed its Response to both the *pro se* claims and the new claims raised in the counseled amended petition.  Counsel then filed a Traverse Brief.  I will first discuss the claims in the counseled petition, then address Moore's other *pro se* claims.

## II.   <u>LEGAL STANDARDS</u>

I analyze these claims according to the precepts of Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) which altered habeas review of state convictions brought under § 2254.  Under AEDPA, a petitioner must demonstrate that the state court's adjudication of the merits "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme

Court of the United States." See Penry v. Johnson, 532 U.S. 782, 792-92 (2001) (explaining two-prong standard); Williams v. Taylor, 529 U.S. 362, 403-04 (2000) (same).  Additionally, state court findings of fact are to be presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  This presumption applies even if the finding was made by a state court of appeals rather than by the state trial court. Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001).

The Supreme Court has said that "a state court decision will be 'contrary to' our clearly established precedent if the state court either 'applies a rule that contradicts the governing law set forth in our cases,' or 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" Penry, 532 U.S. at 792 (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court decision is an unreasonable application of the Supreme Court's precedent if the court "correctly identifies the governing legal rule but applies it unreasonably to the facts" of the case.  Id.

## III.  **LAPRICIA JESSUP**

The first issue raised in Moore's amended counseled petition is that trial counsel Tinari was ineffective for failing to investigate Moore's claims that Lapricia Jessup could have

provide exculpatory evidence.[4]  I recommend that this issue was never fairly presented to the state courts and thus is unexhausted and procedurally defaulted.  In addition, I recommend that even if it was fairly presented, the state court's conclusion that counsel was not ineffective was not contrary to Supreme Court law.

A.    **Procedural Default**

The habeas statute requires that prisoners exhaust their claims in state court before seeking relief from the federal courts.  See 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.").  Absent exceptional circumstances, a federal court may not determine the merits of a habeas corpus petition until the petitioner has exhausted all

---

[4]I note that Moore also raises a derivative ineffective assistance of counsel issue based upon PCRA counsel's failing to raise trial counsel's ineffectiveness regarding Jessup and for filing the Finley letter.  There is no constitutional right to counsel in a post-conviction proceeding and hence there can be no claim for constitutionally ineffective assistance.  See Pennsylvania v. Finley, 481 U.S. 551 (1987) (establishing that there is no constitutional right to an attorney in state post-conviction proceedings) and Wainwright v. Torna, 455 U.S. 586 (1982) (establishing that where there is no constitutional right to counsel there can be no ineffective assistance of counsel claim); Coleman v. Thompson, 501 U.S. 722, 752 (1991) (citing Finley and Torna); Dunn v. Colleran, 247 F.3d 450, 467 (3d Cir. 2001) (citing Finley).

means of available relief under state law.  28 U.S.C. § 3354(b);
O'Sullivan v. Boerkel, 526 U.S. 838, 839 (1999); Slutzker v.
Johnson, 393 F.3d 373, 379 (3d Cir. 2004).  Principles of comity
"dictate that when a prisoner alleges that his continued
confinement for a state court conviction violates federal law,
the state courts should have the first opportunity to review this
claim and provide any necessary relief."  O'Sullivan, 526 U.S. at
844-45.  The petitioner bears the burden of proving that he has
exhausted available state remedies.  Landano v. Rafferty, 897
F.2d 661, 668 (3d Cir. 1990).

     "Just as in those cases in which a state prisoner fails to
exhaust state remedies, a habeas petitioner who has failed to
meet the State's procedural requirements for presenting his
federal claims has deprived the state courts of an opportunity to
address those claims in the first instance."  Coleman v.
Thompson, 501 U.S. 722,731-732 (1991).  The default will be
excused if a petitioner can demonstrate cause and prejudice, or
that a failure to consider his claims will result in a
miscarriage of justice.  Id. at 750.  To satisfy the cause and
prejudice requirement, courts have held that cause exists when a
petitioner demonstrates "some objective factor external to the
defense impeded efforts to comply with the State's procedural
rule."  Slutzker, 393 F.3d at 381 (quoting Murray v. Carrier, 477
U.S. 478, 488 (1986)).  The cause must be "something that cannot

fairly be attributed to the petitioner." <u>Coleman</u>, 501 U.S. at 753.  Prejudice means that the alleged error worked to the Petitioner's actual and substantial disadvantage.  <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982).  To show a fundamental miscarriage of justice, a Petitioner must present new evidence that he is actually innocent of the crime for which he has been convicted.  <u>Cristin v. Brennan</u>, 281 F.3d 404, 412 (3d Cir. 2002).  To establish the requisite probability of actual innocence, the Petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995).  The United States Supreme Court has repeatedly held, however, that the scope of the miscarriage of justice exception is a narrow one.  <u>Sawyer v. Whitley</u>, 505 U.S. 333 (1992); <u>McCleskey v. Zant</u>, 499 U.S. 467 (1991); <u>Dugger v. Adams</u>, 489 U.S. 401 (1989).  This exception only applies when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray</u>, 477 U.S. at 496.  The Supreme Court has suggested that the test for actual innocence is whether there is "a fair probability that, in light of all the evidence, including that to have been . . . wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt of his guilt." <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454-5 n.17 (1986).

The procedural default in this case was Moore's failure to timely file a PCRA petition raising the specific issue of **trial counsel** ineffectiveness involving Jessup.[5]  The record demonstrates that Moore did not raise the issue on the face of any of his PCRA petitions.  Rather, he apparently mentioned it to McDermott after she was appointed his counsel by the PCRA Court.  Because she filed the <u>Finley</u> letter suggesting there was no merit to the claim, **Moore asserted that PCRA counsel McDermott – not trial counsel Tinari – was ineffective**.  This, I recommend, does not satisfy the requirement that the issue of trial counsel ineffectiveness be fairly presented to the state courts.

In order to satisfy the exhaustion requirement, a federal habeas claim must have been "'fairly presented' to the state courts. . . .  This means that a petitioner must 'present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'"  <u>Bronshtein v. Horn</u>, 404 F.3d 700, 725 (3d Cir. 2005) (internal citations omitted).  A claim is not fairly presented if the state court "must read beyond a petition or

---

[5]Under Pa. Con. Stat. Ann. tit. 42, § 9545(b), a PCRA petition "shall be filed within one year of the date the judgment becomes final."  Exceptions to the one year statute of limitations are provided in cases where the delay was the result of interference by government officials, the facts supporting the claim were unknown, and where the right asserted is a newly recognized one.  There is no claim that any of these exceptions apply.  As the one year period has long expired, any issue not previously raised in the state courts has now been waived.

brief . . . that does not alert it to the presence of a federal claim." Baldwin v. Reese, 541 U.S. 27, 32 (2004).  Mere similarity of the federal and state issues is insufficient to prove exhaustion.  Duncan v. Henry, 513 U.S. 364, 366 (1995). The relevant inquiry is whether the petitioner presented in state courts the legal theory and supporting facts asserted in the federal habeas petition.  Nara v. Frank, 488 F.3d 187, 198 (3d Cir. 2007); Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001).

The PCRA court was clearly required to "read beyond" the Petition, which never raised the issue of trial counsel ineffectiveness regarding the failure to investigate or call Jessup.  In addition, Moore also failed to raise the issue in his response to the Notice to Dismiss, wherein he raised only McDermott's alleged ineffectiveness.  Finally, after his petition was dismissed, Moore did not raise the issue on appeal. Accordingly, I recommend that the issue is unexhausted and procedurally defaulted.

I recommend that the default cannot be excused.  Moore has failed to satisfy his burden of showing that some objective factor external to the defense impeded his efforts to raise the trial counsel ineffectiveness issue.  Indeed, in his counseled Traverse Brief, Moore attempts no such showing, arguing only that the state court determinations were contrary to or an unreasonable application of Supreme Court law.  I also recommend

that Moore has failed to demonstrate prejudice.  The PCRA Court's findings – adopting as fact McDermott's findings that Jessup would not testify, and that if called she would have given highly prejudicial testimony – are entitled to a presumption of correctness.  See 28 U.S.C. § 2254(e)(1).  On this record, Moore cannot show that the failure of trial counsel to investigate and call Jessup worked to his actual and substantial disadvantage.

Finally, I recommend that Moore cannot show that this alleged failure constituted a fundamental miscarriage of justice. Moore's burden is to present new evidence that he is actually innocent of the crime for which he has been convicted, i.e. that it is more likely than not that no reasonable juror would have convicted him had it heard Jessup's testimony.  This proposition is highly unlikely given that Jessup would have offered clearly inculpatory evidence had she actually testified.

**B.    The Strickland Standard**

Even if the trial counsel ineffectiveness issue involving Jessup had been properly preserved and exhausted, I recommend that the state court's adjudication of the claim was not improper under the AEDPA standard.  The clearly established Supreme Court law governing claims of ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668, 687 (1984), wherein the Court established a two-pronged test to evaluate Sixth Amendment claims of ineffective assistance of counsel.  An individual

making such a claim must show: (1) that "counsel's performance was deficient," which is measured by "reasonableness under prevailing professional norms;" and (2) that counsel's "deficient performance prejudiced the defense." Id. at 687-90.

Counsel's failure to investigate potential witnesses can amount to ineffective assistance of counsel.  United States v. Gray, 878 F.2d 702 (3d Cir. 1989).  This principle is derived from the Strickland mandate that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.  However, "trial counsel is not bound by an inflexible constitutional command to interview every possible witness.  Instead, counsel [is] simply required to exercise reasonable professional judgment in deciding whether to interview [a witness]."  Lewis v. Mazurkiewicz, 915 F.2d 106, 113 (3d Cir. 1990).

The PCRA Court determined as a matter of fact that, while Jessup was present at the trial, she was not in the courtroom and did not speak with defense counsel.[6]  (Response Ex. G at 6-7.)[7]

_____

[6]In her Finley letter, McDermott stated that Jessup appeared at court during the trial but was not permitted into the courtroom because she had her young child with her.  (Response Ex. C at 6.)

[7]In its opinion, the Superior Court added that Moore did not assert that trial counsel knew of Jessup's existence or that counsel should have known of her existence. I note that the Superior Court's finding, while binding on habeas review, is

Moore also did not assert in the state courts that Jessup was
prepared to cooperate with the defense or that she would have
testified on Moore's behalf if trial counsel had contacted her.
(Response Ex. I at 8.)  Indeed, the PCRA Court determined as fact
that Jessup, when contacted by McDermott, indicated that she
would not sign an affidavit or testify.  (Response Ex. G at 6-7.)
Because the PCRA court found that Jessup was unwilling to
testify, its decision to deny relief on that basis was not an
unreasonable application of the deficiency prong of <u>Strickland</u>,
as construed by the Third Circuit in <u>Lewis</u>.[8]

## IV.   **PCRA COURT ERRORS**

The second issue raised in the amended counseled habeas
petition is that the PCRA Court erred when it failed to hold an
evidentiary hearing on the issue of Lamb's recantation of his

---

somewhat at odds with the fact that Jessup was the mother of
Moore's child.  However, Moore's relationship with Jessup does
not by itself satisfy Moore's burden to show that trial counsel
was aware of the fact that Jessup had knowledge of exculpatory
facts.

[8]Moore also cannot establish the prejudice prong of
<u>Strickland</u>.  It is not enough that petitioner demonstrate that
counsel's errors had some conceivable effect on the outcome of
the proceeding.  <u>Id</u>. at 693.  "Virtually every act or omission of
counsel would meet that test."  <u>United States v. Valenzuela-
Bernal</u>, 458 U.S. 858, 866-67 (1982).  Instead, petitioner must
show that counsel's actions were so unprofessional that they
prejudiced the jury and undermined the outcome.  As I stated
above, Jessup would have offered clearly inculpatory evidence had
she actually have been called to testify.  Rather than prejudice
the defense, trial counsel's failure to call her may have aided
the defense.  The failure to investigate a witness that would
have given inculpatory evidence cannot constitute prejudice.

trial testimony before concluding that the recantation was absurd
and incredible.  The third issue raised in the amended counseled
habeas petition is that the PCRA Court erred when it dismissed
the PCRA petition's claim of actual innocence based on Lamb's
recantation.  Because allegations of due process violations
occurring during state collateral review proceedings are not
cognizable on habeas review, I recommend that these issue have no
merit.  See Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir.
2004) (holding that "habeas proceedings are not the appropriate
forum . . . to pursue claims of error at the PCRA proceeding. . .
.  It is the original trial that is the 'main event' for habeas
purposes."); Abu-Jamal v. Horn, 520 F.3d 272, 297 (3d Cir. 2008)
(agreeing with the District Court's determination that "a viable
habeas claim cannot be predicated on petitioner's allegation of
error in his PCRA hearing.").[9]

## V.   THE CORONER'S REPORT

Moore argues in his *pro se* Petition that trial counsel
Tinari was ineffective for agreeing to stipulate to the Coroner's

---

[9]The Third Circuit noted in Abu-Jamal that even though error
in state collateral proceedings cannot be grounds for federal
habeas relief, the error "may affect the deference we owe the
court's findings under § 2254(d) and 2254(e)(1)." Id. at 297
n.25 (quoting Lambert, 387 F.3d at 247).  I note, specifically,
that I have taken into consideration the PCRA Court's failure to
hold a hearing in my determination to defer to that Court's
factual findings.  Judge Geroff was not merely the PCRA judge, he
was also the trial judge in the non-jury trial.  As such, he was
intimately familiar with the trial evidence and the circumstances
surrounding Lamb's recantation.

report.  This issue was raised as part of a derivative claim in Moore's appeal from the denial of his first PCRA Petition.  The Superior Court rejected the claim, holding,

> Appellant claims that his underlying claim [i.e. the derivative trial counsel ineffectiveness claim] has merit because the stipulation deprived him of the opportunity to cross-examine the medical examiner, resulting in a violation of Appellant's constitutional right to confront witnesses.
> Upon review, we find this claim to be patently meritless as Appellant fails to explain how he was prejudiced by the stipulation.  Moreover, we agree with the Commonwealth that the stipulation was reasonable under the circumstances because the manner and cause of Cedano's death was not in dispute.  Accordingly, trial counsel was not ineffective in this regard.

(Response Ex. I at 8-9.)  I recommend that this determination was not contrary to nor an unreasonable application of Supreme Court law.

In his *pro se* brief, Moore essentially repeats the arguments he made in his brief to the Superior Court, to wit, that counsel's stipulating to the report lent credibility to Lamb's testimony that the victim was shot in the back of the head.  He does not explain how counsel's stipulating to the report was itself a violation of professional norms, nor does he make any showing that the Coroner's report was subject to impeachment, which the stipulation effectively waived.  He also makes no argument that the Superior Court decision improperly interpreted the Strickland standard.  While Moore may not have liked the content of the report, and wished the Commonwealth had not

-19-

offered it into evidence, the fact that trial counsel stipulated to its entry does not establish constitutional ineffectiveness.

## VI.  **LAMB'S TESTIMONY**

The next issue raised in the *pro se* brief is that trial counsel Tinari was ineffective for failing to object to Lamb's false testimony and/or argue prosecutorial misconduct.  I recommend that the state court's consideration of the issue was not an unreasonable application of <u>Strickland</u>.  Any objection to Lamb's trial testimony would have proved meritless; thus Tinari's failure to raise the objection cannot constitute ineffective assistance.

In deciding Moore's third PCRA petition, Judge Geroff rejected the factual underpinnings of any assertion that an objection to Lamb's trial testimony would have had any merit:

> In his affidavit of April 14, 2004, Mr. Lamb asserts that he lied when he testified at trial that the defendant participated with him in the robbery and murder.  He now alleges that it was another man from the neighborhood named Newton who joined him.  He states that the petitioner had left the area prior to the robbery and shooting.  Mr. Lamb gives as his reason for saying that the petitioner was with him the fact that the police told him that he would get the death penalty if he did not testify against petitioner.  Mr. Lamb's assertion is absurd and totally incredible.  If another man from the neighborhood had been involved instead of the petitioner, Mr. Lamb could have received the same deal for his testimony against that man as the one he received to testify against the petitioner.

(Response Ex. K at 4-5.)  The Superior Court, in affirming the dismissal of the PCRA petition, stated:

-20-

> In rejecting Moore's claim, the PCRA judge, who also
> presided over Moore's non-jury trial, assessed the
> credibility and significance of the recantation in
> light of the evidence as a whole and determined that
> Lamb's recantation was "absurd and totally incredible."
> . . .  Neither Moore nor Lamb could proffer any
> explanation for why the police would ignore Newton's
> involvement in the shooting and elect to prosecute
> Moore for a crime he did not commit.  Further, Lamb's
> plea agreement, which was outlined on the record during
> Moore's trial, did not require Lamb to identify Moore
> specifically; instead it merely required Lamb to
> cooperate and testify truthfully. . . .  As such the
> record reveals no logical reason for Lamb to name Moore
> as his accomplice unless Moore, in fact, had
> participated in the robberies.

(Response Ex. M at 7.)  On habeas review, the credibility

determination on Lamb's recantation is presumed correct unless

the petitioner rebuts the presumption with clear and convincing

evidence.  Moore has failed to carry this burden.

## VII. <u>ADVISING MOORE NOT TO TESTIFY</u>

Next, Moore asserts that trial counsel Tinari was

ineffective in advising him not to testify in his own behalf.  In

addressing the issue on the first PCRA petition, Judge Geroff

stated that he:

> conducted a colloquy with the defendant at the
> conclusion of the Commonwealth's case concerning the
> defendant's right to testify and his decision not to
> exercise that right. . . .  The record is clear that
> the defendant consulted with his attorney, that he was
> satisfied with the advice of counsel and that he had
> not been threatened or coerced into waiving his right
> to testify.  The defendant fails to allege any specific
> act or advice other than " . . . advising defendant not
> to testify" which could support a finding that counsel
> interfered with the defendant's right to testify or
> that he gave unreasonable advice on the subject.

(Response Ex. G at 5 (citations to the trial record omitted).)[10]
In his instant petition, Moore argues that his colloquy with the
trial judge was inadequate because his responses thereto
consisted only of monosyllabic replies to the Court's questions,
which do not reflect that he was actually aware of the rights he
was waiving.  (Pro Se Mem. at 24.)  I recommend that the state
court's consideration of the issue was not an unreasonable
application of Strickland.

The PCRA Court's determinations that Moore actually
consulted with Tinari on the issue of whether he should testify,
that he was satisfied with Tinari's advice, and that he had not
been threatened or coerced into waiving his right to testify, are
factual findings which I must presume to be correct.  Moore has
offered nothing to meet his burden to demonstrate they are not
correct.  Further, Moore's argument attacks not his attorney's
advise, but rather the adequacy of the Court's colloquy – an
issue he did not exhaust in the state courts as part of his
direct appeal.  While he asserts that if he had testified he
would have refuted Lamb's version of the events, I recommend that
this assertion is insufficient to demonstrate that the state
courts reached an improper determination of his ineffectiveness
claim.

_____

[10]On appeal, the Superior Court adopted this reasoning as
its own.  (Response Ex. I at 5.)

-22-

## VIII.     DUE PROCESS VIOLATION - NEGATING THE COMMONWEALTH'S BURDEN OF PROOF

Moore next argues in his *pro se* brief that the trial judge "in charging himself on the polluted source of James Lamb's testimony raised doubt which the court expressed hesitation of the testimony truthfulness in, (the truth determining process) deny Petitioner due process of law which negated the Commonwealth burden of proving every element of the offense by reasonable doubt." (Pro Se Br. at 28.)  This issue was never exhausted in the state courts, and is procedurally defaulted with no showing of cause and prejudice or fundamental miscarriage of justice.  I recommend that it be dismissed on this basis.

## IX.      TRIAL COUNSEL COERCING MOORE TO WAIVE HIS RIGHT TO JURY TRIAL

Finally, Moore argues that trial counsel Tinari was constitutionally ineffective when he coerced Moore into accepting a bench trial.  In determining that this issue had no merit,[11] Judge Geroff found:

> Jury selection was to commence on May 3, 2000.  Jury selection was postponed to allow the defendant to consult with his mother about his decision to be tried by a jury or by a judge. . . .  On May 4, 2000, the defendant advised the court that he had decided to be tried without a jury, and the court conducted an extensive colloquy in which the court explained the essentials of a trial by jury and the various charges

---

[11]Judge Geroff also determined, initially, that the issue was not cognizable under the PCRA.  (Response Ex. G at 3.)

against him including the possible penalties which
could be imposed as provided in Pa. Crim. P. 620. . . .
The defendant indicated that he had consulted with his
attorney, that he was satisfied with his attorney's
advice and that no one had threatened him or promised
him anything to induce him to waive his right to a jury
trial. . . .  In addition, the defendant signed two
separate written jury waiver colloquies.

(Response Ex. G at 3-4.)

Moore did not include this issue in his subsequent appeal to
the Superior Court.  (Response Ex. H at i-ii.)  Because Moore did
not include the issue in his appeal to the Superior Court, I
recommend that it was never exhausted and is procedurally
defaulted with no showing of cause and prejudice or fundamental
miscarriage of justice.  I recommend that it be dismissed on this
basis.

Even if it was exhausted, I recommend that the claim is
meritless.  Moore asserts in his federal habeas petition that he
waived his right to a jury trial because Tinari told him that if
he chose to take a jury, he would be put on death row, but that
Tinari could convince a judge not to give him the death penalty.
(Pro Se Br. at 32.)  He also asserts that he initially rejected a
bench trial but, during a meeting with Tinari and his mother, he
succumbed to his mother's weaping plea that he take Tinari's
advice.  Finally, he asserts that Tinari threatened to withdraw
as counsel if he did not accept a bench trial.  (Id.)

Judge Geroff's findings that Moore made his decision to
waive a jury trial after he consulted with his attorney, that he

-24-

was satisfied with Tinari's advice, and that no one had threatened him or promised him anything to induce him to waive his right to a jury trial, are factual findings entitled to the presumption of correctness.  Moore's factual assertions, I recommend, are insufficient to overcome that presumption.  To meet his burden, Moore must present clear and convincing evidence.  <u>See</u> 28 U.S.C. § 2254(e)(1).  His factual assertions regarding coercion, which contradict the PCRA court's findings, are wholly unsupported.  It begs wondering why, if Moore is correct that his mother was present when Tinari threatened to withdraw as counsel, he has offered no affidavit or other evidence from his mother to support his factual assertions.

For all of these reasons, I make the following:

## RECOMMENDATION

AND NOW, this 20th day of October 2008, IT IS RESPECTFULLY RECOMMENDED that this matter should be DISMISSED without an evidentiary hearing.  I further RECOMMEND that there is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation.  <u>See</u>  Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.


BY THE COURT:


 /s/ Arnold C. Rapoport
ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE